1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                       EASTERN DISTRICT OF CALIFORNIA

9

10   JOHN JACOB GULLATT, III,              CASE NO. 1:20-cv-00473-EPG

11                Plaintiff,               ORDER FOR PLAINTIFF TO:

12          v.                             (1)  FILE A FIRST AMENDED
                                                COMPLAINT; OR
13
     JEFF DIRKSE, et al.,                  (2)  NOTIFY THE COURT THAT HE
14                                              WISHES TO STAND ON THE
                 Defendants.                    COMPLAINT, SUBJECT TO THE
15                                              COURT ISSUING FINDINGS AND
                                                RECOMMENDATIONS TO THE
16                                              DISTRICT JUDGE CONSISTENT WITH
                                                THIS ORDER
17
                                           THIRTY (30) DAY DEADLINE
18
                                           (ECF No. 1)
19

20          John Jacob Gullatt, III ("Plaintiff") is a pretrial detainee proceeding *pro se* and *in forma*

21   *pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. The complaint, filed April

22   2, 2020, alleges claims against various law enforcement officers concerning searches at his

23   residence. (ECF No. 1). Plaintiff's complaint is now before this Court for screening.

24          The Court finds that the complaint fails to state any cognizable claims that can proceed at

25   this time, in light of the ongoing state court proceedings. The Court will grant Plaintiff leave to

26   file a First Amended Complaint if he believes additional factual allegations will state a claim or

27   explain why this court can proceed at this time notwithstanding the state court action.  In the

28

                                                 1

alternative, Plaintiff may notify the Court that he wishes to stand on his complaint, in which case the Court will issue findings and recommendations to a district judge recommending dismissal of the action consistent with this order.

## I.      SCREENING STANDARD

Under 28 U.S.C. § 1915(e)(2), in any case in which a plaintiff is proceeding *in forma pauperis*, the Court must conduct a review of the complaint to determine whether it "state[s] a claim on which relief may be granted," is "frivolous or malicious," or "seek[s] monetary relief against a defendant who is immune from such relief." If the Court determines that the complaint fails to state a claim, it must be dismissed. *Id.* An action is frivolous if it is "of little weight or importance: having no basis in law or fact" and malicious if it was filed with the "intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id*. at 678.

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, *Hosp. Bldg. Co. v. Trs. of Rex Hospital*, 425 U.S. 738, 740 (1976), construe *pro se* pleadings liberally in the light most favorable to the Plaintiff, *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

1    **II.        PLAINTIFF'S ALLEGATIONS**

2              In February 2019, Plaintiff's son Jaden Gullatt's probation officer, Brooke Smith

3    ("Smith"), exercised a probation search on Plaintiff's residence at 905 Hawthorne, Modesto, CA

4    95350. The searchable places in his home were his son's bedroom and common areas. Smith

5    insisted that Plaintiff's wife ("Wife") open the Plaintiff's and her locked bedroom door so she

6    could "clear" the area. "We" informed Smith that everyone living at the residence were in the

7    living room. Smith threatened to kick the door down. Then Wife reluctantly opened the room,

8    even though Plaintiff was not on any type of parole or probation. Smith placed Plaintiff in

9    handcuffs until she left, making Plaintiff late for work.

10             Smith asked to whom the safes in the bedroom belonged, and Wife explained that they

11   were hers. Smith asked Wife to open the safe. Wife refused, stating that they were not searchable,

12   and the key to the safe was at Plaintiff's mother's residence. Smith became irate and "began

13   threatening that we were being uncooperative," and promised that she would get into the safes

14   with a warrant.

15             On April 9, 2019, Deputy Cristopher Gallo ("Gallo") and his subordinate deputy officers

16   acting at his direction, Deputies Brock Dias, Miguel Villasenor, and Daniel Hutsell ("Dias,"

17   "Villasenor," and "Hutsell," respectively), each Stanislaus County Sheriff deputies, served a

18   warrant at Plaintiff's residence. The warrant was to be served on Plaintiff's son Jaden Gullatt for

19   a past arrest. Defendant Jeff Dirske is also sued as sheriff.

20             In the warrant application, Gallo claimed that Jaden Gullatt's probation officer had

21   informed him that Plaintiff's 14-year-old daughter, Jayda Gullatt, informed the probation officer

22   Smith that there were guns located in a safe in Plaintiff's room. This was not true: there were no

23   guns there. And Plaintiff's daughter signed a sworn affidavit stating that she never spoke with any

24   probation officer concerning that matter.

25             Plaintiff's room was broken into, his wife's inherited heirlooms were cut open and

26   destroyed. Plaintiff was arrested and detained for items that his wife swore were hers and

27   inherited from her late father.

28             Plaintiff complains about Smith's false statement to Gallo, the illegal search and

destruction of property, false arrest, false imprisonment, and retaliation. He seeks, among other things, the Court order "that any items found in me & my wifes room (locked safes) be inadmissible to that warrant."

### III.   SECTION 1983

The Civil Rights Act, under which this action was filed, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard

1   'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d

2   1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir.

3   2008).

4        Additionally, a plaintiff must demonstrate that each named defendant personally

5   participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must

6   be an actual connection or link between the actions of the defendants and the deprivation alleged

7   to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658,

8   691, 695 (1978).

9   **IV.   EVALUATION OF PLAINTIFF'S COMPLAINT**

10       **A.   *Younger* Abstention**

11       Federal courts "may not interfere with pending state criminal or civil proceedings." *Aiona*

12  *v. Judiciary of State of Haw.*, 17 F.3d 1244, 1248 (9th Cir. 1994).  This doctrine, called "Younger

13  abstention," is rooted in the "desire to permit state courts to try state cases free from interference

14  by federal courts." *Younger v. Harris*, 401 U.S. 37, 43 (1971) ("[T]he underlying reason for

15  restraining courts of equity from interfering with criminal prosecutions is reinforced by an even

16  more vital consideration, the notion of 'comity,' that is, a proper respect for state

17  functions . . . ."). Thus, "[a]bsent extraordinary circumstances, interests of comity and federalism

18  instruct federal courts to abstain from exercising our jurisdiction in certain circumstances when

19  asked to enjoin ongoing state enforcement proceedings." *Page v. King*, 932 F.3d 898, 901 (9th

20  Cir. 2019) (alterations, internal quotation marks and citation omitted); *accord Trump v. Vance*,

21  No. 19-635, --- S. Ct. ----, 2020 WL 3848062, at *4 (U.S. July 9, 2020) (noting *Younger*

22  "generally precludes federal courts from intervening in ongoing state criminal prosecutions").

23       "Y*ounger* abstention is appropriate when: (1) there is an ongoing state judicial

24  proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate

25  opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief

26  seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding."

27  *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (alterations, internal quotation marks, and

28  citation omitted).

1   Typically, dismissal is required for *Younger* abstention. *Aiona*, 17 F.3d at 1248 (holding

2   when abstaining under *Younger*, "a district court must dismiss the federal action . . . [and] there

3   is no discretion to grant injunctive relief"). But "federal courts should not dismiss actions where

4   damages are at issue; rather, damages actions should be stayed until the state proceedings are

5   completed." *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004).

6   On the other hand, "[f]ederal courts will not abstain under *Younger* in extraordinary

7   circumstances where irreparable injury can be shown." *Page*, 932 F.3d at 902 (internal quotation

8   marks and citation omitted).

9   Here, it appears that judicial proceedings were ongoing when Plaintiff filed the instant

10   action. First, Plaintiff's address, according to his complaint, is the "Lerdo Max-Med Facility

11   (Kern County Sheriff's Office)," indicating Plaintiff is either a pretrial detainee or state prisoner.

12   Additionally, Plaintiff's requested relief includes a request "that any items found in me & my

13   wifes room (locked safes) be inadmissible to that warrant." That further indicates there is an

14   active criminal case against Plaintiff. Therefore, the first requirement has been met.

15   The second requirement has been met because the state proceedings implicate important

16   state interests in conducting criminal matters unimpeded. *Kelly v. Robinson*, 479 U.S. 36, 49

17   (1986) ("This Court has recognized that the States' interest in administering their criminal justice

18   systems free from federal interference is one of the most powerful of the considerations that

19   should influence a court considering equitable types of relief"); *Mackey v. Montrym*, 443 U.S. 1,

20   17 (1979) (finding that a state has a "paramount interest . . . in preserving the safety of its public

21   highways"); *Aiona*, 17 F.3d at 1249 ("[T]he state has an important state interest in keeping drunk

22   drivers off the road").

23   Third, Plaintiff has an adequate opportunity to raise his federal claims in the state

24   proceedings. "*Younger* requires only the absence of 'procedural bars' to raising a federal claim in

25   the state proceedings." *Commc'ns Telesys. Int'l v. Cal. Pub. Util. Comm'n*, 196 F.3d 1011, 1020

26   (9th Cir. 1999); *see also Juidice v. Vail*, 430 U.S. 327, 337 (1977) ("Appellees need be accorded

27   only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings,

28   and their failure to avail themselves of such opportunities does not mean that the state procedures

6

1   were inadequate").  No such procedural bars are alleged in the complaint.  The third prong of the

2   *Younger* test is thus met.  Because the complaint asks the Court to intrude upon the ordinary

3   course of state criminal proceedings in a way that would threaten the autonomy of the state court,

4   it must be barred from proceeding.  *Gilbertson v. Albright*, 381 F.3d 965, 981 (9th Cir. 2004).

5        Finally, deciding an evidentiary issue in a criminal case will have the practical enjoining

6   the state action, as it will require the trial court to suppress evidence in the proceeding.

7        Plaintiff has not alleged any extraordinary circumstances or irreparable injury which

8   would warrant a deviation from *Younger* abstention.

9        Here, it appears that the issues posed by Plaintiff's complaint are being addressed in his

10  ongoing state case and should be raised there.  This Court is not in a position to intrude on that

11  case while in progress.  To the extent that case reaches a resolution against Plaintiff, Plaintiff

12  should appeal that resolution in state court, through the appeals process.  If it reaches a resolution

13  in favor of Plaintiff, Plaintiff may re-file his federal lawsuit, if he chooses.

14       **B.     Legal Standards**

15       If Plaintiff's claims are not subject to *Younger* abstention, then the following legal

16  standards may be relevant:

17            1.     <u>False Arrest / False Imprisonment During Probation Search</u>

18       "[O]fficers may constitutionally detain the occupants of a home during a parole or

19  probation compliance search." *Sanchez v. Canales*, 574 F.3d 1169, 1173 (9th Cir. 2009),

20  *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012).

21       In *Sanchez*, Los Angeles Police Department officers conducted a probation search on the

22  Sanchez home because LAPD's records indicated a probationer lived there. *Id.* at 1172. LAPD

23  officers ordered the residents out of the home, and they sued under § 1983. However, their Fourth

24  Amendment claims were denied because the police had probable cause to believe that the

25  probationer was home. *Id.* at 1173.

26            2.     <u>Search of Bedroom</u>

27                 *a)*     *Standards for Probation Search as to Third Parties*

28       In *Smith v. City of Santa Clara*, the Ninth Circuit addressed whether "a warrantless search

of a residence that the police have probable cause to believe is the residence of a probationer, and

that is otherwise reasonable as to the probationer, [is] unreasonable as to a non-probationer

occupant of the residence who is present at the time of the search and refuses to consent to the

search[.]" 876 F.3d 987, 991 (9th Cir. 2017). The court adopted a totality-of-the-circumstances

test:

> [T]he question is whether a warrantless probation search that affects the rights of
> a third party is reasonable under the totality of the circumstances.  To answer this
> question, we balance the degree to which the search intrudes upon the third party's
> privacy against the degree to which the search is needed for the promotion of
> legitimate governmental interests. A non-probationer, of course, has a higher
> expectation of privacy than someone who is on probation, and therefore the
> privacy interest in this case is greater than it would be if the search affected only
> the probationer.

*Id.* at 994 (citations omitted).

*Smith* concerned the search of Josephine Smith's home. Josephine's daughter, Justine, was

serving probation for felony convictions and had listed Josephine's address as her residence. The

police had probable cause to believe Justine had just committed a violent felony, so, to find

Justine, they conducted a warrantless search of Josephine's residence without her consent.

Josephine and her granddaughter sued. *Id.* at 988-89. Under these circumstances, the Ninth

Circuit found that the probationary search satisfied the Fourth Amendment:

> It is undisputed that the police knew, at the time of the search, that Justine was
> serving a felony probation term for serious offenses. It is further undisputed that
> the police had probable cause to believe that Justine had just been involved in the
> theft of an automobile and a stabbing, and that she was still at large. As the Court
> recognized in *Knights*, one of the governmental interests justifying warrantless
> probation searches is the need to protect the public from the probationer, who is
> more likely than the ordinary citizen to reoffend.  Obviously, once the
> government has probable cause to believe that the probationer has actually
> reoffended by participating in a violent felony, the government's need to locate
> the probationer and protect the public is heightened. This heightened interest in
> locating the probationer is sufficient to outweigh a third party's privacy interest in
> the home that she shares with the probationer. Therefore, under the undisputed
> facts of this case, we conclude that the warrantless search of the home over
> Josephine's objection was reasonable as a matter of law.
>
> We stress that our conclusion is limited to the facts of this case, where the police
> had probable cause to believe that the probationer, who was on probation in
> connection with serious offenses, had just participated in a violent felony and was

1
2
3

still at large. We express no view as to what would happen in a case in which the police conduct a search—over the objection of a present and objecting co-occupant—of a probationer's residence who is on probation for offenses that are neither violent nor serious, and who is not suspected of involvement in a subsequent offense.

4

*Id.* at 994 (citation omitted).

5
6
7
8

> b)   *Protective Sweep*
>
> "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." The protective sweep is justified when the officers are effectuating "the arrest of a suspect in his home pursuant to an arrest warrant."

9
10
11

*United States v. Job*, 871 F.3d 852, 862 (9th Cir. 2017) (quoting *Maryland v. Buie*, 494 U.S. 325, 327 (1990)) (holding a pat-down of defendant, a probationer, was not valid as a protective sweep).

12
13
14
15
16
17

The Ninth Circuit has "note[d] that there is both a split between the circuits and a split within our circuit as to whether a protective sweep may be done where officers possess a reasonable suspicion that their safety is at risk, even in the absence of an arrest." *Mendez v. Cty. of Los Angeles*, 815 F.3d 1178, 1191 (9th Cir. 2016), *vacated on other grounds and remanded sub nom. Cty. of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539 (2017) (internal quotation marks and citations omitted).

18
19
20
21
22
23
24

In an unreported case, the Ninth Circuit declined to hold whether a protective sweep is permissible to search rooms a probationer does not control in a probationer's home. *United States v. Franco*, 744 F. App'x 360, 362-63 (9th Cir. 2018). The Court there suppressed a search of a non-probationer's bedroom and avoided the protective-sweep issue by determining it "was overly broad and cannot be characterized as a brief and cursory protective sweep" and lacking in articulable facts supporting the belief that someone was in the bedroom and posed a danger to the officers. *Id.* at 364.

25

### 3.   Retaliation

26

The Ninth Circuit has discussed what a plaintiff must allege to state a claim of retaliation:

27
28

> "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right[';] ... the First Amendment

prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman,* 547 U.S. at 256, 126 S.Ct. 1695 (first alteration in original) (citation omitted) (quoting *Crawford–El v. Britton,* 523 U.S. 574, 588 n. 10, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)). We have held that "to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.' " *Mendocino Envtl. Ctr. v. Mendocino Cnty.,* 192 F.3d 1283, 1300 (9th Cir.1999) (quoting *Sloman v. Tadlock,* 21 F.3d 1462, 1469 (9th Cir.1994)). Lacey need not show his "speech was actually inhibited or suppressed." *Id.* Rather, we consider "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Id.* (quoting *Crawford–El v. Britton,* 93 F.3d 813, 826 (D.C.Cir.1996), *vacated on other grounds,* 520 U.S. 1273, 117 S.Ct. 2451, 138 L.Ed.2d 210 (1997)). Lacey must allege facts ultimately enabling him to "prove the elements of retaliatory animus as the cause of injury," with causation being "understood to be but-for causation." *Hartman,* 547 U.S. at 260, 126 S.Ct. 1695; *see id.* ("It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway."); *Dietrich v. John Ascuaga's Nugget,* 548 F.3d 892, 901 (9th Cir.2008).

*Lacey v. Maricopa Cty.*, 693 F.3d 896, 916–17 (9th Cir. 2012).

## V.   CONCLUSION AND ORDER

The Court finds that Plaintiff's complaint fails to state any cognizable claims that can proceed in federal court at this time, given the pending state court proceedings.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." Accordingly, the Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Plaintiff is granted leave to file an amended complaint within thirty days.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Additionally, Plaintiff is advised that an amended complaint supersedes the original complaint, *Lacey v. Maricopa County*, 693 F.3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and must be complete in itself without reference to the prior or superseded pleading, Local Rule 220.

Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Alternatively, Plaintiff may choose to stand on this complaint, in which case the Court will issue findings and recommendations to a district court judge consistent with this order.

Based on the foregoing, it is HEREBY ORDERED that:

1. Within thirty (30) days from the date of service of this order, Plaintiff shall either:

   a. File a First Amended Complaint, which the Court will screen in due course; or

   b. Notify the Court in writing that he wants to stand on his complaint, in which case the Court will issue findings and recommendations to a district judge consistent with this order.

2. If Plaintiff chooses to file an amended complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:20-cv-00473-EPG; and

3. Failure to comply with this order may result in the dismissal of this action.

IT IS SO ORDERED.

Dated:   __July 21, 2020__                     /s/ Erica P. Grosjean
                                               UNITED STATES MAGISTRATE JUDGE